Green, J.
delivered the opinion of the court.
It appears from the pleadings and proof in this case, that, in 1833, the father of complainant (the complainant being then an infant) caused a small improvement to be made on the land in dispute, and procured a survey of the same, intending to enter it in complainant’s name as an occupant. He was advised that he could not do so, on account of complainant’s infancy; and he then procured Simon Cameron, (the ancestor of the defendant,) who lived wiih him, to permit the survey and probate to be made in his name, for the benefit of the complainant, to which Cameron agreed, and the survey was accordingly made and returned to the office. The complainant continued in possession of the land, claiming it as his own, until Comeron’s death; Cameron never having claimed or exercised any right thereto. On the 3d of February, 1846, the complainant tendered an entry and survey for said land, as a general caterer, regularly made, under the act *571 of 1842, ch. 34, sec. 9, together with fifteen dollars and twenty-eight cents, the proper amount for the land proposed to be entered. The entry taker refused to receive the entry thus tendered, owing to the interference of occupant entry No. 844, in the name of Simon Cameron; but filed the entry and survey and the money in his office, where they still remain. On the 4th of March, 1846, this land was entered by the heirs of Cameron, and the twelve and a half cents an acre paid into the office, according to the provisions of the act of 1842; and on the 15th of May, 1846, a grant was issued therefor to the heirs of Cameron. It appears from the deposition of Hess, the entry taker, that no probate of occupancy in the name of Cameron is in his office, nor has he ever seen any; nor is there any evidence that any probate was made.
Upon these facts, the complainant seeks a decree divesting the defendants, heirs of Cameron, of the title to the land, and vesting the same in him; 1st, because the occupant entry was made for him, and has been in his possession more than three years, thereby giving him title under the provisions of the occupant law of 1837; and secondly, because Cameron had no probate of occupancy, nor any right of occupancy upon which such probate could have been made; and therefore the land was subject to appropriation by general enterers, under the Óth section of the act of 1842, and as such the entry taker should have received his entry -tendered the 3d of February, 1846, one month before the entry of the defendants was made.
The defendants resist this bill solely upon the alleged ground that the bill discloses that the complainant and his father united with Cameron to commit a fraud upon *572 the government, in falsely representing Cameron to he a resident on the land, entitled to a right of occupancy, when they knew that he had no such right; and as complainant’s title set up by him grows out of this fraudulent transaction, a court of equity will afford him no relief.
It is certainly clear, that if the complainant’s claim depended upon the enforcement of the trust assumed by Cameron, in fraud of the law, a court of equity would repel him; because a party will not be assisted in equity when the right he sets up had its origin in fraud, or in an illegal contract. But such is not this case in either aspect of the bill.
In the first aspect, the complainant claims to have been entitled to the occupant entry of Cameron, by reason of his possession for more than three years, which possession, under the act of 1827, is evidence of a right thereto, although no assignment from the owner of the occupant be shown; the three years possession is taken as proof of assignment. This claim, therefore, does not come within the principle that repels from a court of equity a party who seeks to set up a right originating in fraud, or in a violation of law.
But we do not think the complainant’s claim in this aspect well supported; for the reason, that to make his possession effectual to confer on him a right of occupancy, it must appear that such right of occupancy had existed in some other person, and which the three years possession of the complainant vests in him. But from this proof, no such right of occupancy ever existed in Simon Cameron. As a matter of fact, the proof shows that Cameron never had possession of the land, made no improvement on it, and was not entitled to prove an *573 occupancy. Nor is there any proof that he ever did prove an occupancy. The hill asserts that he did not, and the entry taker swears that he has never seen such probate, and that none such is in his office. As, therefore, Cameron had no right of occupancy, the subsequent three years possession of the complainant could confer no right on him.
2. But the complainant tendered an entry and survey, together with twelve and a half cents an acre, to the entry taker, on the 3d of February, 1846, in strict compliance with the 9th section of the act of 1842; and the land being vacant, by reason of the invalidity of Cameron’s occupant claim, the complainant had a right, as he proposed to do, to enter the same as a general en-terer. The entry of the defendant, made the 4th March, 1846, was made m violation of the previously acquired right of the complainant; and the grant subsequently issued to the defendants vested the legal title in them, which, in equity, they hold as trustees for complainant.
Let the title be divested out of the defendants and vested in the complainant, he paying to the defendants all costs and charges incurred in 'procuring said title.
Reverse the decree.